UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

FRED NEKOUEE, Individually, )
)
Plaintiff, )
)
vs. ) Case No. 3:19-cv-866
)
OPELL HOLDINGS, LLC, )
an Alabama Limited Liability Company, )
)
Defendant. )
)

# COMPLAINT
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, Individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated, (sometimes referred to as "Plaintiff"), hereby sues the Defendant, Opell Holdings, LLC, an Alabama Limited Liability Company (sometimes referred to as "Defendant"), for Injunctive Relief, as well as attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Tampa, Florida, in the County of Hillsborough.

2. Defendant's property, Huddle House, is located at 2020 Gateway Drive, Opelika, AL 36801, in the County of Lee (sometimes referred to as the "subject property").

3. Venue is properly located in the Middle District of Alabama because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff, Fred Nekouee, is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility. Mr. Nekouee travels to Montgomery, Alabama every three to six months to attend heavy equipment auctions and/or to visit heavy equipment dealerships, where he compares prices to equipment available in other areas, and to evaluate whether to buy or sell heavy equipment.

6. Fred Nekouee has visited the property and has dined at the restaurant on several occasions, including October 11, 2018, and June 7, 2016, which visits form the basis of this lawsuit. Plaintiff plans to return to the property to avail himself of the goods and services offered to the public at the property since he likes the food at Huddle House, and it is conveniently located close to and/or on the way to/from the heavy equipment auctions and dealerships. He recently visited the subject property on October 24, 2019. He has definite plans to return to this area on March 17-21, 2020 to attend heavy equipment auctions, and on various future dates to be determined, and would like to eat at the Huddle House if that property is made accessible to him.

7. The Plaintiff has encountered architectural barriers at the subject property. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability to park a vehicle, impaired his ability to access the property due to excessively steep slopes in parking spaces, access aisles, and ramps for the disabled, and have impaired his use of the restrooms at the property.

8. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards. Excessively steep cross slopes causes the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

9. On his visit to the subject property, the Plaintiff encountered excessively steep running slopes in its parking lot, access aisles and walking surfaces (sidewalks). The Plaintiff encountered and observed barriers to access in the men's restroom in the Huddle House #741; and so, he also tried to use the women's restroom, in which women's restroom he also encountered and observed barriers to access.

10. The Plaintiff is deterred from visiting the Huddle House #741 restaurant even though he enjoys its food because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

11. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible for complying with the obligations of the ADA. The place of public accommodation that the Defendant owns, operates, leases or leases to is known as the Huddle House #741 restaurant, and is located at 2020 Gateway Drive, AL 36801 in the County of Lee.

12. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described in the allegations in paragraphs 18 through 58 of this Complaint. These violations either inhibit or prohibit the Plaintiff from safely and easily accessing the property. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of

3

the ADA by the Defendant.

13. Fred Nekouee desires to visit the Defendant's Huddle House #741 restaurant not only to avail himself of the goods and services available at the property, but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

14. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

15. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

16. The subject property was constructed by the Defendant, the construction of which was completed subsequent to January 26, 1993.

17. Preliminary inspections of the Applebee's have shown that violations exist. The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

18. In the parking lot, the parking space for disabled patrons has excessive running slope, as high as 1:24.4 (4.1%), which is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010 ADAAG § 502.4. This makes it very difficult for an individual in a wheelchair to stay stable and not to roll down while getting in and out of the vehicle in the parking space.

19. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

4

20. In the parking lot, the parking space for disabled patrons with van has excessive running slope, as high as 1:33.3 (3%), which is steeper than the maximum allowed slope of 1:48 (2%), which makes it very difficult for an individual in a wheelchair with van to stay stable and not to roll down while getting in and out of the vehicle in violation of Federal Law 2010 ADAAG § 502.4.

21. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

22. In the parking lot, the running slope of the access aisle serving the disabled parking spaces is 1:34.5 (2.9%), which exceeds the maximum allowed slope of 1:48 (2%) in violation of Federal Law 2010 ADAAG § 502.4. This makes it difficult for an individual in a wheelchair to remain stable while getting in and out of the vehicle on the access aisle.

23. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

24. The running slope of the accessibility ramp is 1:7.8 (12.8%) which is dangerously greater than the maximum permitted slope of 1:12 (8%), in violation of Federal Law 2010 ADAAG § 405.2. This makes it difficult for an individual in a wheelchair to climb up and dangerous to descend the ramp.

25. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

26. The ramp landing has a slope of 1:7.8 (12.8%), and is greater than the maximum allowed slope of 1:48 (2%), which makes an individual in a wheelchair unstable while trying to go up and down the ramp in violation of Federal Law 2010 ADAAG § 405.7.1.

27. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

28. The force needed to open the restaurant door is 7 pounds which exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door. The required force makes it very difficult to open the door by a disabled individual in violation of Federal Law 2010 ADAAG § 404.2.9.

29. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

30. The restaurant door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 5 inches (blocked by candy containers) and less than 18 inches which is the minimum clearance as required by Federal Law 2010 ADAAG Sections § 404.2.4. This makes it difficult for an individual in a wheelchair to maneuver in the entrance hallway and open the door.

31. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

32. The counter throughout the restaurant is 44 inches high, and in excess of the maximum allowed counter height of 36 inches, which makes it difficult for an individual in a wheelchair to access objects in violation of Federal Law 2010 ADAAG § 904.4.1.

33. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

34. The men's restroom door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway in a door with latch and closer is blocked by the wall-mounted paper towel dispenser and is 10 inches and less than the minimum allowed clearance

of 12 inches, which makes it difficult for an individual in a wheelchair to open the door in violation of Federal Law 2010 ADAAG Sections § 404.2.4.

35. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

36. The rear wall grab bar in men's restroom only extends 16 inches and 20 inches from the centerline of the water closet and does not extend the minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side which makes it difficult for an individual in a wheelchair to support himself using the grab bar to sit on toilet in violation of Federal Law 2010 ADAAG § 604.5.2.

37. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

38. The toilet paper dispenser in men's restroom is outside the reach range of an individual in a wheelchair, which dispenser centerline is 2 inches from the front of the water closet and not between 7 inches minimum and 9 inches maximum, and is in violation of Federal Law 2010 ADAAG § 604.7.

39. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

40. The distance from the toilet centerline to the side wall in men's restroom is 22 inches and not between the minimum of 16 inches (405 mm) minimum and maximum of 18 inches (455 mm), which makes it difficult for an individual in a wheelchair to reach the grab bar or toilet paper dispenser and violates Federal Law 2010 ADAAG § 604.2.

41. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

42. The protrusion of the wall-mounted paper towel dispenser with leading edge in men's restroom is 10 inches and more than maximum required horizontal protrusion distance of 4 inches (100 mm) which can cause a head hit accident for a person in a wheelchair or a blind person when approaching the lavatory, in violation of Federal Law 2010 ADAAG § 307.2.

43. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

44. In the men's restroom, the door latch requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip of a disabled individual in wheelchair in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

45. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

46. The women's restroom door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 14 inches and less than the minimum clearance of 18 inches, which makes it really difficult for an individual in wheelchair to open the door in violation of Federal Law 2010 ADAAG Sections § 404.2.4.

47. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

48. The time for the women's restroom door to close from an open position of 90 to 12 degrees from the latch is three seconds which is less than the minimum required time of five seconds and makes it difficult for a disabled individual in a wheelchair to keep the door open while crossing the doorway, in violation of Federal Law 2010 ADAAG § 404.2.8.1.

49. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

50. The front minimum maneuvering perpendicular width in a push door parallel approach with latch and closer and more than 22 inch side is 44 inches and less than the minimum allowed clearance of 48 inches as required by Federal Law 2010 ADAAG Sections §404.2.4.

51. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

52. In the women's restroom, the door latch requires tight grasping, pinching, or twisting of the wrist and cannot be opened with a closed fist or loose grip of a disabled individual in a wheelchair in violation of Federal Law 2010 ADAAG § 309.4 and 404.2.7.

53. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

54. The coat hook in the women's restroom is installed at 62 inches from the floor and higher than maximum reach of 48 inches from the finished floor which is in violation of Federal Law 2010 ADAAG §§ 404.2.7 and 603.4.

55. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

56. The protrusion of the paper towel dispenser with leading edge in women's restroom and between 27 inches (685 mm) and 80 inches (2030 mm) above the finish floor is 10 inches and more than 4 inches (100 mm) maximum required horizontally which can cause a head hit accident for a person in a wheelchair or a blind person when approaching the lavatory, in violation of Federal Law 2010 ADAAG § 307.2.

57. The removal of the barrier to access alleged in the foregoing paragraph is readily achievable.

58. The accessible features of the facility are not maintained, creating barriers to

access for the Plaintiff as set forth herein, in violation of 28 CFR §36.211.

59. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

60. The discriminatory violations described in paragraphs 18-58 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

61. Defendant has discriminated against the individual by denying them access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals

with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

62. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

63. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

64. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

65. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

66. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter subject property to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures its violations of the ADA. The Order shall further require the Defendant to maintain the required assessable features on an ongoing basis, and to require the institution of a policy that requires Defendant to maintain its accessible features.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d. Such other relief as the Court deems just and proper, and/or is allowable under

Title III of the Americans with Disabilities Act.

Dated: 10/25/19

Respectfully submitted,

/s/ Patrick Lyle Doman

Patrick Lyle Doman, Esq. (#ASB-9530-Q41G)
285 South Foster Street
Dothan, AL  36301
Telephone: (334) 200-6032
Email: patrick.lyle.doman@gmail.com

Brandon A. Rotbart, Esq., *pro hac vice pending*
FULLER, FULLER & ASSOCIATES, P.A.
12000 Biscayne Blvd., Suite 502
North Miami, FL 33181
Telephone: (305) 891-5199
Email: rotbart@rotbartlaw.com
*Counsel for Plaintiff, Fred Nekouee*

13