IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

FRED NEKOUEE,

Plaintiff,

v.

OPELL HOLDINGS, LLC,

Defendants.

CASE NO.: 3:19-cv-866-ECM (WO)

**ORDER**

This matter is before the Court on Defendant's Motion for a Stay in Proceedings (doc. 15), filed on December 30, 2019. The Plaintiff filed a Response (doc. 22), on January 16, 2020, and a supplement to the Response (doc. 24), on January 17, 2020. The Defendant filed a Reply (doc. 26), on January 23, 2020. For the reasons set forth below, the Defendant's Motion is due to be GRANTED.

## I. JURISDICTION AND VENUE

The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(1) and (2).

## II. LEGAL STANDARDS

### 1. The Americans with Disabilities Act

Title III of the Americans with Disabilities Act ("ADA") prohibits discrimination on the basis of disability in public accommodations and "gives specific guidance to that end." *Gomez v. Dade Cnty. Fed. Credit Union*, 2015 WL 2082213 at *1 (11th Cir. 2015). Any person who owns, leases, or operates a "place of public accommodation" is subject to

the ADA's "clear, strong, consistent, enforceable standards." *Id.* quoting 42 U.S.C. § 12101(a)(7); *see also* 42 U.S.C. § 12181(7)(B) (defining a public accommodation as a "restaurant, bar, or other establishment serving food or drink"). As to public facilities, Title III defines "discrimination" as, *inter alia*, "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "[A]ny person who is being subjected to discrimination on the basis of disability in violation of [Title III]" may bring a private action. *Id.* § 12188(a). The availability of attorney fee awards to prevailing parties has incentivized private actions—even though the relief available to private ADA plaintiffs is otherwise limited to injunctive relief and costs.

**2. Stay of Proceedings**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544–45 (11th Cir.1983) (noting district courts possess "general discretionary power" to stay proceedings "in the interests of justice and in control of their dockets"). In deciding whether to stay an action, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. The party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* at 255. Courts should not, however, enter an indefinite or immoderate stay absent "a pressing need." *Id.*

## III. DISCUSSION

### 1. Facts and Procedural History

Plaintiff Fred Nekouee filed suit against Defendant Opell Holdings, LLC ("Opell") on November 8, 2019, alleging that a Huddle House restaurant operating on Opell's property in Opelika, Alabama, is inaccessible to the Plaintiff and other persons with disabilities due to numerous violations of the ADA. The Plaintiff has progressive multiple sclerosis and requires the use of a wheelchair for mobility. The Plaintiff contends that he encountered barriers at the Huddle House restaurant including improper slope of the designated disabled parking spaces, excessive counter heights throughout the restaurant, and restrooms that fail to comply with necessary ADA regulations. The Plaintiff claims that Opell's violations prevent the Plaintiff from availing himself of the goods and services offered at the Huddle House located on Opell's property.

In response, Opell filed its Motion for an eight-month stay of this action, informing the Court that, prior to the instant suit being filed, Opell entered into a confidential settlement agreement with a third party ("the claimant") concerning the subject property and had already begun remediation efforts. Opell filed the following evidence in support of its Motion:

1. a letter sent to Opell by the claimant's attorney (doc. 15-2);

2. a redacted copy of the confidential settlement agreement (doc. 15-2); and

3. an affidavit from Alex Rainey, the Managing Member of Opell, confirming that, prior to being served with the Plaintiff's Complaint, Opell had obtained estimates, consulted with engineers, and was in the process of seeking funding for larger modification

projects (doc. 15-1). Rainey estimates that remediation will be complete within eight months.

### 2. The Parties' Arguments

In its Motion and Reply to the Plaintiff's Response, Opell notes that the ADA violations alleged in the Plaintiff's Complaint are the same as those raised by the claimant. Opell argues that, with remediation efforts already underway, requiring Opell to litigate this case would waste judicial resources, "enrich the Plaintiff's counsel through recovery of unnecessary attorney's fees and expert costs," and undermine the very spirit of the ADA. (Doc. 16). Opell contends that the settlement agreement requires Opell to bring the property to full ADA compliance and that it has already completed certain efforts, such as converting the former men's restroom into a unisex ADA-compliant restroom. (Doc. 26).

The Plaintiff, on the other hand, argues that the settlement agreement does nothing to advance the goals of the ADA, but is instead "a fraud to get the claimant's lawyer paid, while not requiring the Defendant to actually make any repairs to bring its property in compliance with the ADA." (Doc. 22). The Plaintiff asserts that "the 'claimant' appears solely concerned with how much money he will get for his attorney's fees and costs" while lamenting that if a stay is granted, "the Plaintiff herein will be stuck with thousands of dollars in attorney's fees and costs attributable to the filing of the lawsuit herein, which he should rightfully recover from the Defendant." *Id.* The Plaintiff urges that this settlement agreement should not be the basis for a stay of this case and cautions that courts should not stay ADA enforcement actions to allow defendants to remediate their properties and avoid paying attorney's fees. The Plaintiff, fearing that a stay of this case will ultimately moot

his claims and leave him "stuck" with his fees and costs, suggests a solution. The Plaintiff proposes that "the Defendant should simply concede these matters, and either settle the case in its entirety, or at least settle the matter of the ADA violations while reserving on and allowing the Court to adjudicate the matter of the Plaintiff's attorney's fees and costs." *Id.*

The Defendant replies that "Plaintiff's response to the Motion to Stay brings home the point that this action is one that is driven by the economics of attorney's fees." (Doc. 26). The Court agrees.

**3. Analysis**

In determining whether to enter a stay in this action, the Court must weigh the competing interests of the parties. *Landis,* 299 U.S. at 254–55. Here, Opell has not only entered into a binding agreement to make ADA-compliant modifications to its property, but had already commenced efforts to fulfill this obligation before the instant suit was filed. Having reviewed the confidential settlement agreement, the Court finds the agreement is sufficient to justify a stay of these proceedings. The agreement and supporting affidavit of Alex Rainey evidence Opell's commitment to remedy any ADA violations at its property and to provide photographs of the modifications once completed.

The possibility that the Plaintiff might be "stuck" with attorney's fees and expert costs in this action does not outweigh the interests of avoiding needless expenditures and conserving judicial resources. Because Opell has already completed certain repairs and is working to secure funding for larger remediation projects, the Court finds that it is in both the Plaintiff's and the public's interest to allow Opell to continue its efforts without the

hinderance of unnecessary litigation. Indeed, the Plaintiff was put on notice that Opell was making remediation efforts when his attorney was contacted by defense counsel after the lawsuit was filed. Instead of reevaluating his position in light of this information, the Plaintiff took an unnecessarily adversarial position, accusing Opell of paying "hush money" to the claimant's lawyer, characterizing the settlement agreement as a "fraud," and demanding that he recover from the Defendant because "ADA enforcement is predicated upon payment of these attorney's fees and costs." (Doc. 22). While instituting legal action may be necessary in order to compel ADA compliance, such lawsuits are not merely vehicles by which attorneys trigger an immediate entitlement to fees and costs. Plaintiff's arguments in opposition to the stay are wholly unpersuasive.

The Court is cognizant that it should not enter indefinite or immoderate stays absent a pressing need by the moving party. *Id.* at 255. A stay of the instant case is neither indefinite nor immoderate. Revisiting this issue in eight months' time will not "work damage" to the Plaintiff. *Id.* Rather, this time period allows Opell to remediate its property to achieve accessibility by the Plaintiff and others with disabilities, fulfilling the laudable goals of the ADA and giving the Plaintiff a portion of the relief requested in his Complaint.

## IV. CONCLUSION

The Court finds it is in the interests of justice to grant a stay of this action to allow Opell to complete remediation efforts to bring its property to full ADA compliance. Accordingly, it is ORDERED as follows:

1. Defendant Opell's Motion for a Stay in Proceedings (doc. 15), is GRANTED;
2. This action is STAYED pending further order of the Court;

3. **On or before October 19, 2020**, Opell shall submit to the Plaintiff photographic evidence of ADA-compliant modifications made to the Huddle House restaurant and surrounding property located at 2020 Gateway Drive, Opelika, Alabama, 36801; and

4. **On or before October 26, 2020,** each party shall file a position statement regarding whether the stay should be lifted; and if so, how lifting the stay affects the manner in which this case shall proceed. If a party contends the stay should not be lifted, the party's position statement should include reasons for continuing the stay and a proposed date on which the stay could be lifted.

DONE this 19th day of February, 2020.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE